In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 21-3309 & 22-1383

MICHAEL MEADOWS,

*Plaintiff-Appellee,*

*v.*

NCR CORPORATION,

*Defendant-Appellant.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cv-6221 — **Manish S. Shah**, *Judge.*

———————————

ARGUED SEPTEMBER 15, 2022 — DECIDED OCTOBER 5, 2023

———————————

Before SYKES, *Chief Judge*, and RIPPLE and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. The Fair Labor Standards Act requires certain employers to pay overtime. Only certain activities count toward overtime: activities integral to an employee's job—her principal activities—count so long as an employer has reason to know the employee is performing those activities. On the other hand, activities merely incidental to an employee's core job responsibilities do not count.

But if an employer elects—by contract, custom, or practice—to pay for those incidental activities, the FLSA obliges it to pay overtime for them. This appeal asks us to consider whether the FLSA mandates overtime pay for the performance of incidental activities—which an employer has chosen to remunerate by custom or practice—even if the employee failed to comply with the requirements for payment imposed by that custom or practice. We conclude that it does not.

I

A

NCR Corporation manufactures, sells, and supports point-of-sale systems and ATMs. It employs thousands of customer engineers, or CEs, to service NCR devices in the field. Because of the nature of their work, these employees work remotely with minimal on-site supervision.

NCR has policies governing how CEs are paid. NCR instructed CEs to work only during their official shifts and prohibited off-the-clock work. It also required CEs to record their time in an electronic timekeeping system. If a CE did work overtime—contrary to NCR guidance—the CE would be paid for the time, but only if she recorded it.

Michael Meadows worked as a CE for NCR from 2008 to 2019. Meadows knew of NCR's policies prohibiting overtime and reporting requirements. But pursuant to NCR's practice, when Meadows did record unauthorized overtime, he was paid for that time. This included time spent on activities he performed before or after his shifts or during meal times, such as reviewing work emails, determining a route, responding to work calls, and ensuring that his van was stocked with

adequate parts. But when he did not record that time, he was not compensated.

B

Meadows sued NCR under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and Illinois's parallel minimum wage law, 820 ILCS 105/1 et seq., seeking compensation for his unrecorded overtime work. At the close of discovery, NCR moved for summary judgment. It argued that because the activities Meadows performed outside his normal shift were not integral and indispensable to his work, they were not principal activities compensable under the FLSA. Second, it contended that even if they were compensable, NCR did not know that Meadows was performing those activities, so it could not be liable.

The district court denied the motion. It concluded that Meadows's off-the-clock activities were not part of his core responsibilities of servicing NCR's devices. Thus, they were incidental, not principal, activities. The district court explained that, under the FLSA, employers are required to compensate an employee's performance of all principal activities (those that are "integral and indispensable" to an employee's job), but not incidental activities (such as commuting or otherwise preparing for work) unless an exception applies. 29 U.S.C. § 254; 29 C.F.R. § 790.8(b). The court then found that the FLSA only required NCR to pay for Meadows's unrecorded overtime if NCR elected to do so by contract, custom, or practice. 29 U.S.C. § 254(b). Addressing NCR's argument that it did not have to compensate Meadows because it did not know about his off-the-clock work, the district court concluded that an employer's constructive knowledge of an employee performing compensable work is enough to establish

liability. *Id*. §§ 203(g), 207(a)(1). In sum, the district court held that to hold NCR liable, Meadows would have to prove that (1) NCR had a custom or practice of paying CEs for these types of incidental activities, and (2) NCR had constructive knowledge that Meadows performed these (compensable) activities. The court found that there was sufficient evidence to raise issues of material fact as to both issues. Thus, it denied summary judgment, and the case went to trial.

After the jury found for Meadows, NCR moved for a new trial under Federal Rule of Civil Procedure 59. It argued there was insufficient evidence to support a finding that NCR had a custom or practice of paying for unrecorded incidental time. The district court denied the motion, focusing on the activities at issue and NCR's knowledge of such activities. It determined that NCR could not escape liability by imposing a recording requirement on its custom of paying for Meadows's incidental activities because NCR had constructive knowledge of those activities. The court concluded that because NCR paid for recorded activities, the jury's verdict awarding Meadows overtime pay for unrecorded time was supported by the evidence.

## II

NCR raises three issues on appeal. We put two of them aside and turn to its most substantive challenge. NCR argues that the district court erred when it concluded that NCR had to pay overtime for unrecorded incidental activities if it compensated an employee who recorded those same activities because NCR had constructive knowledge that those activities were being performed.

We review a district court's denial of a motion for a new trial under Rule 59 for an abuse of discretion. *Avery v. City of Milwaukee*, 847 F.3d 433, 438 (7th Cir. 2017). "Embedded legal questions are reviewed de novo." *Id.*

A

The district court correctly identified that while the FLSA requires an employer to pay an employee overtime for the performance of all principal activities, it does not require payment for incidental activities unless the employer has agreed to pay for those activities by contract, custom, or practice. 29 U.S.C. § 254(a)–(b). As noted, upon finding that Meadows's activities were incidental, the district court held that Meadows could prevail if he could prove that (1) NCR had a custom or practice of paying CEs for the type of incidental activities Meadows engaged in, and (2) NCR had constructive knowledge that Meadows performed these (compensable) activities.

In denying NCR's motion for a new trial, the district court reasoned that because NCR had a custom or practice of compensating Meadows's off-the-clock activities, NCR was required to pay Meadows for work that it knew or should have known about. In considering NCR's custom or policy, the district court did not distinguish recorded from unrecorded activities, instead focusing on the type of activities Meadows performed. R. 346 at 10 ("The focus is on the *activity* at issue, not whether the employee records his time spent on the activity.") (emphasis in original).

The district court's consideration of NCR's custom or practice was too narrow. The court only considered the kind of activities NCR had compensated but disregarded the

circumstances under which NCR compensated those activities. Consequently, it ignored the limits NCR placed on when incidental activities would be compensated, casting aside NCR's requirement that an employee must record those activities to be compensated. Thus, the district court concluded that Meadows's activities were compensable under the custom or policy exception solely because NCR compensates CEs for those types of activities in general—even though NCR would not pay a CE for such activities under these circumstances. In other words, the court decided that since NCR chose to compensate these activities in one instance, it had to compensate them in all instances. But, under the § 254(b) exception, an incidental activity is compensable only if two conditions are met: the employer elected to pay for such activities by contract, custom, or practice and the employee engaging in such activities complied with all the requirements imposed on her by that contract, custom, or practice.

The district court then concluded that, because Meadows's activities were compensable under the § 254(b) exception, NCR's knowledge that Meadows performed those activities was relevant to NCR's liability. But the court should not have reached the knowledge issue because NCR had no custom or practice of compensating unrecorded off-the-clock activities. If an incidental activity is not compensable then an employer's knowledge that an employee is performing that activity is irrelevant. An employer who knows that an employee is performing incidental activities owes that employee nothing for those activities unless it elected to pay for them by contract, custom, or practice. Accordingly, a court need not consider an employer's knowledge of an employee's activities until it: (1) defines the employer's contract, custom, or practice of compensating incidental activities, which includes all

conditions on compensation; and (2) finds that the contract, custom, or practice applies in the instant case because the employee satisfied the relevant conditions—for example, by recording her incidental activities.

Section 254(b) grants employers the discretion to adopt contracts, customs, and practices for compensating employees well beyond the floor set by Congress in the FLSA's other provisions. This discretion allows employers to condition payment for incidental activities on, as in this case, an employee's recording of their time. Focusing only on the types of activities compensated, and not the requirements of the contract, custom, or policy, would turn an employer's discretion to pay for incidental activities into a trap, with the predictable consequence that employers will cease paying for incidental activities altogether.

B

Relying on *Allen v. City of Chicago*, 865 F.3d 936, 939 (7th Cir. 2017), Meadows argues that a custom or practice should not distinguish between recorded and unrecorded time because Meadows was discouraged from recording his off-the-clock work. But that argument misses that the preliminary step is to define the custom or practice at issue. The district court's understanding of what defines the custom or practice was too narrow, and that is enough to vacate. Meadows's factual arguments about discouragement are thus immaterial to that legal error.

Next, Meadows contends that NCR waived its main argument by not raising it before the district court. But it is a "well settled" rule that an appellant may "attack[] on appeal the legal theory upon which the district court based its decision."

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 927 (7th Cir. 2015) (quoting *Hedge v. County of Tippecanoe*, 890 F.2d 4, 8 (7th Cir. 1989)). The district court addressed NCR's motion for a new trial on legal grounds, and NCR can challenge the theory on which the district court based its decision. As the district court noted in its order denying summary judgment, NCR also argued that it would have paid Meadows for any recorded incidental work. NCR defended itself at trial with the same theory, arguing in closing that "every single one of NCR's witnesses told you that NCR never pays for unrecorded work time." And as the district court remarked in its post-trial order, NCR maintained that the verdict was against the manifest weight of evidence because if NCR had a policy of paying for incidental time, it was only for recorded incidental time. This case was litigated around the idea that NCR's customary payments did not extend to unrecorded time. The district court rejected that idea as a legal matter. Thus, NCR's argument is preserved.

We are also mindful that, as we read the record, the district court did not clearly articulate its view that the employer's conditions on payment are irrelevant to the § 254(b) analysis until NCR moved for a new trial. It makes sense, then, that NCR's appeal mirrors its argument for a new trial: NCR has consistently contended that Meadows failed to prove that NCR has a custom or practice of paying for unrecorded incidental work, as the jury instruction required. The jury instruction addressed NCR's custom or practice as a factual matter. NCR's Rule 59 motion presented a fact-based argument that the verdict was against the manifest weight of evidence because there was no evidence that NCR had a custom or practice of compensating unrecorded incidental time. The district court denied NCR's motion for a new trial by rejecting NCR's

arguments on mistaken legal grounds, which NCR has properly challenged on appeal.

### III

Recall that NCR made three arguments on appeal. All take the shape of a challenge to the district court's refusal to grant a new trial. We have concluded that its primary argument has legal merit and vacate and remand based on that determination. Thus, we need not consider its remaining arguments.

In sum, we hold that an employer's knowledge of an employee's incidental activity is immaterial when it has no obligation to pay for that activity in the first instance because the employer's custom or practice of payment only demands compensating employees who have satisfied the custom or practice's requirements—which are inextricable from the custom or practice itself. The district court erred in concluding to the contrary and denying NCR's motion for a new trial based on that conclusion. NCR has not asked us for judgment as a matter of law, only that we reverse and remand for a new trial. Consequently, and because we are limited to the relief NCR has sought and the error identified, we vacate the district court's denial of NCR's motion for a new trial and remand for reconsideration consistent with this opinion. We vacate, rather than reverse, because although the district court committed legal error, it remains best positioned to evaluate the evidence and determine whether a new trial is warranted under the proper legal framework. See *Mejia v. Cook County., Ill.*, 650 F.3d 631, 635 (7th Cir. 2011). We necessarily vacate the fees and costs award, too. See *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009). We entrust the nature and extent of the proceedings on remand to the district court's sound discretion. And although it is technically

inapplicable because we do not order a new trial, we override
Circuit Rule 36.

VACATED AND REMANDED