In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 24-2377

SALVATORE ZICCARELLI,

*Plaintiff-Appellant,*

*v.*

THOMAS J. DART, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-03179 — **John J. Tharp, Jr.**, *Judge.*

---

ARGUED APRIL 10, 2025 — DECIDED JUNE 30, 2025

---

Before RIPPLE, HAMILTON, and SCUDDER, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This case arises under the Family
and Medical Leave Act of 1993 (FMLA or Act), 29 U.S.C.
§ 2601 et seq. Plaintiff Salvatore Ziccarelli is a former em-
ployee of defendant Cook County Sheriff's Office. In 2016,
Ziccarelli called Wylola Shinnawi, FMLA coordinator for the
Sheriff's Office. During that call, we must assume on appeal,
Shinnawi warned him to "not use any more time or you will

be disciplined." Ziccarelli used one more day of FMLA leave and then resigned.

Ziccarelli then filed this suit alleging violations of federal law. After the district court granted summary judgment for the Sheriff's Office, we affirmed on most issues but reversed and remanded for trial on Ziccarelli's FMLA interference claim. *Ziccarelli v. Dart* ("*Ziccarelli I*"), 35 F.4th 1079, 1092 (7th Cir. 2022). Before trial on the FMLA interference claim, the parties and the court discussed whether Ziccarelli could receive damages such as lost wages that resulted from his resignation. That conversation focused on whether Ziccarelli could seek damages under a theory of constructive discharge—the idea that he was *forced* to resign—a theory that we rejected when discussing Ziccarelli's retaliation claim in *Ziccarelli I. Id.* at 1090–92 (expressing skepticism of constructive discharge damages stemming from Ziccarelli's interference claim as well).

At trial upon the close of Ziccarelli's case, counsel for the Sheriff's Office orally moved for "a judgment of directed finding." She then asked if she should do that "in front of the jury or at sidebar," but said nothing more. The court took the motion under advisement, and the jury later returned a verdict of $240,000 for Ziccarelli. The Sheriff's Office then renewed its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), arguing that Ziccarelli could not show prejudice resulting from any alleged interference because he took an additional day of FMLA leave *after* the disputed phone call. The district court granted that motion and, in the alternative, conditionally granted a new trial.

Ziccarelli has appealed. He argues that the district court erred in granting the Sheriff's Office's Rule 50(b) motion

because the "law and facts that entitle the movant to the judgment" were not specified in the pre-verdict motion as required by Rule 50(a). He also contends there is sufficient evidence in the record to show he was prejudiced by Shinnawi's interference. We agree with Ziccarelli that the grounds underlying the Rule 50(b) motion were not properly presented before the verdict, so we reverse the district court's entry of judgment as a matter of law. However, we affirm the district court's alternative decision granting a new trial.

I. *Background*

Salvatore Ziccarelli began working as a correctional officer for the Cook County Sheriff's Office in 1989. In 2011, Ziccarelli started using intermittent FMLA leave to manage his post-traumatic stress disorder (PTSD). The Sheriff's Office approved his taking up to seven days of FMLA leave per month and allowed him to use accumulated sick leave to receive his regular salary while on FMLA leave.

In 2016, Ziccarelli's PTSD worsened. His doctor recommended that he take eight weeks off for treatment. Sometime during the week of September 12, Ziccarelli contacted Shinnawi, the Sheriff's FMLA coordinator, apparently to discuss taking his FMLA leave in large chunks (called "block leave"). The substance of that telephone call is hotly disputed. Given the jury's verdict, we must credit Ziccarelli's version, which is that Shinnawi warned him to "not use any more [FMLA leave] or you will be disciplined." See, e.g., *Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir. 1994) (when district court grants judgment as a matter of law, we view evidence and reasonable inferences in light most favorable to "party winning the verdict"). Ziccarelli used one more day of FMLA leave the

following Monday, September 19. On September 20, he re-signed.

Ziccarelli then filed this lawsuit alleging (as relevant to this appeal) that the Sheriff's Office interfered with his FMLA rights and retaliated against him in violation of the statute. After the district court granted summary judgment for the Sheriff's Office on both claims, we affirmed summary judgment on the retaliation claim. See *Ziccarelli I*, 35 F.4th at 1092. Ziccarelli's theory of retaliation was that the Sheriff's Office had constructively discharged him after he inquired about taking block leave. *Id.* at 1084. We found this theory untenable: "A reasonable person [in Ziccarelli's position] likely would have thought he had several options short of immediate retirement under these facts, especially when Ziccarelli had not yet even applied for FMLA leave and any potential discipline remained remote." *Id.* at 1091.

We nonetheless reversed summary judgment on Ziccarelli's interference claim, taking the opportunity to straighten out some "varying language that ha[d] led to some confusion" in our FMLA interference case law. *Id.* at 1084. We clarified that a plaintiff like Ziccarelli could show interference with his FMLA rights—and "prejudice" resulting from that interference—without showing "actual denial" of leave time. *Id.* at 1089. But we added a caution related to the issue of constructive discharge:

> One feature of this case makes the prejudice analysis for plaintiff's interference claim more complicated: his decision to retire from the Sheriff's Office shortly after his conversation with Shinnawi. As we explain below, even plaintiff's version of that conversation falls far

short of evidence that could support a claim for constructive discharge. Plaintiff knew that he had some remaining FMLA leave, sick leave, and annual leave available for 2016. He also knew that Shinnawi was the FMLA specialist, and she had said nothing to address his use of sick leave that he says he wanted to use up, along with FMLA leave, to take the eight weeks of leave for the treatment program his doctor recommended. We do not see how an employee in plaintiff's situation could reasonably just give up and walk away from his job, benefits, and treatment plan entirely based on one conversation in which, under his version of the facts, the employer's representative was simply wrong.

The district court may have its hands full on remand, particularly if plaintiff tries to blame snowballing consequences, including even early retirement, on his conversation with Shinnawi. As skeptical as we might be about those efforts, we believe those issues need to be sorted out in the district court in the first instance.

*Id.* at 1090.

After we remanded the case for trial on the FMLA interference claim, potential damages were disputed. The Sheriff's Office filed a motion in limine asking the court to exclude evidence suggesting that Ziccarelli might be entitled to backpay, pension credit, or reinstatement, just the sort of "snowballing" consequences we had in mind. Ziccarelli opposed that motion, arguing that he could show prejudice—an element of his FMLA interference claim—by showing that he would

have structured his leave differently if he had not suffered interference and that resulting damages should be a question for the jury.

The district court held two pre-trial conferences on this and related issues. It first clarified its view that FMLA interference should be assessed from the perspective of a reasonable employee. The court then noted our holding in *Ziccarelli I* that a reasonable person in Ziccarelli's position would not have resigned, prompting Ziccarelli's lawyer to ask "what's the issue that we're trying? What's left?" The district court responded that a reasonable person in Ziccarelli's position might have nonetheless suffered some harm from the interference: "What's left is a reasonable person … might have given up the idea that I'm going to get any more FMLA leave and … maybe he would have structured his leave differently. Maybe he would have invoked sick pay or vacation pay or in some other way responded and … those reactions may not have been irrational…." Dkt. 851 at 14. Later in that conference, the court and both parties acknowledged that Ziccarelli might be able to seek unpaid sick pay. But the court again asked whether Ziccarelli could seek resignation-related damages in light of our *Ziccarelli I* holding that a reasonable employee would not have resigned. The judge postponed further discussion about the damages Ziccarelli could seek.

Roughly a week later, the court held a second pre-trial conference focused on jury instructions. It noted that the FMLA's text allows recovery of "direct" damages, see 29 U.S.C. § 2617(a)(1)(A)(i)(II), but reiterated its skepticism—based on our discussion in *Ziccarelli I*—that Ziccarelli could seek damages under a theory of constructive discharge or damages from related "snowballing consequences." The

court nonetheless read *Ziccarelli I* to imply that some damages could be available "beyond recovery of accrued sick leave benefits," and accordingly decided to instruct the jury broadly: Ziccarelli could receive as damages "any loss of wages and benefits that was directly caused by the … Sheriff's Office's interference with his ability to take FMLA leave." Despite deciding to give this broad instruction, the court cautioned that it might later consider a Rule 50 motion or remittitur motion with respect to damages.

The case was tried to a jury. At the close of Ziccarelli's case, counsel for the Sheriff's Office made an oral motion for "a judgment of directed finding." Dkt. 865 at 277. She asked whether she should do that "in front of the jury or at sidebar?" The court responded: "It's of record now. I'll take it under advisement." *Id.* The jury ultimately returned a verdict for Ziccarelli, awarding him $240,000.

The Sheriff's Office then filed a Rule 50(b) renewed motion for judgment as a matter of law, a Rule 59 motion for a new trial, and a motion for remittitur. Ziccarelli objected that the oral pre-verdict Rule 50(a) motion did not adequately, in the language of the rule, "specify the judgment sought and the law and facts that entitle the movant to the judgment." The court concluded that Ziccarelli had notice of the grounds for the Rule 50(b) motion, citing its pretrial skepticism that "Ziccarelli's damages could include … the loss of his job" and its warning that it might later entertain a Rule 50 motion. *Ziccarelli v. Dart* ("*JMOL Order*"), No. 17-cv-3179, 2024 WL 3740602, at *5 (N.D. Ill. Aug. 7, 2024). On the merits, the court held that trial evidence highlighted that Ziccarelli "took FMLA leave after his phone call with Ms. Shinnawi," which negated "any reasonable inference that Ms. Shinnawi's

statements in her phone call with Mr. Ziccarelli caused him not to take FMLA leave." *Id.* at 6. The court granted judgment as a matter of law for the Sheriff's Office and a conditional new trial if the judgment were later vacated or reversed.

## II. *Analysis*

On appeal, Ziccarelli challenges the district court's ruling on the proper Rule 50 procedure, the substance of the judgment as a matter of law, and the new trial ruling. We begin by addressing the Rule 50 issues, then consider the new trial order.

### A. *Rule 50 Grounds*

Federal Rule of Civil Procedure 50(a)(2) provides that a court can grant a motion for judgment as a matter of law made "any time before the case is submitted to the jury." Rule 50(a)(2) also requires the motion to "specify the judgment sought and the law and facts that entitle the movant to the judgment." If a court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court may entertain a "renewed" post-verdict motion under Rule 50(b). "Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." *Thompson v. Memorial Hospital of Carbondale*, 625 F.3d 394, 407 (7th Cir. 2010) (finding argument first raised in Rule 50(b) motion was not preserved), quoting *Wallace v. McGlothan*, 606 F.3d 410, 418 (7th Cir. 2010); accord, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."). Here, the district court concluded that the grounds for the Sheriff's Office's Rule 50(b)

motion were preserved because the parties and the court discussed evidence of prejudice before trial. *JMOL Order*, 2024 WL 3740602, at *5. We do not see the pre-trial conferences the same way, so we must reverse the grant of judgment as a matter of law.

### 1.   *Standard of Review*

An unbriefed threshold question is the standard of review we should apply to a district court's decision that grounds were properly preserved in a Rule 50(a) motion. While we review de novo the substance of a decision granting judgment as a matter of law, *Beverly v. Abbott Laboratories*, 107 F.4th 737, 748 (7th Cir. 2024), we have not explained how we review an underlying decision on whether grounds were properly preserved. Other authorities also reflect that the standard of review is unclear. See 9B Wright & Miller, Federal Practice and Procedure § 2537 (3d ed. 2025) ("The standard of review for determining preservation of issues is unclear."); *Cornwell Entertainment, Inc. v. Anchin, Block & Anchin, LLP*, 830 F.3d 18, 25–26 (1st Cir. 2016) (noting ambiguity).

We conclude that the appropriate standard of review is for abuse of discretion. The Eighth Circuit seems to be the only circuit to have addressed the issue expressly, and it reviews for abuse of discretion. *Olsen as Trustee for Xurex, Inc. v. Di Mase*, 24 F.4th 1197, 1202 (8th Cir. 2022) ("This court reviews for abuse of discretion the district court's determination about what grounds were raised by a 50(a) motion."). Language in our precedents supports this framework. See, e.g., *Andy Mohr Truck Center, Inc. v. Volvo Trucks North America*, 869 F.3d 598, 605 (7th Cir. 2017) (approving decision to reach merits of Rule 50(b) motion when district court "reasonably found that [defendant] was not trying to slip a new point into the case").

Plus, an abuse of discretion standard makes the most sense. As we explain below, whether a Rule 50(a) motion adequately specified the grounds for judgment will depend on trial context, making it a fact-bound inquiry best resolved by the district court in the first instance. We will show deference to that decision, though we do not delegate it entirely to the district court. See also, e.g., *Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 888 (7th Cir. 2020) (motion for relief from judgment reviewed for abuse of discretion because judges must "'weigh incommensurables'" (quoting *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 831 (7th Cir. 1985)); *People of State of Ill. ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989) (whether party received adequate notice before injunction was issued is committed "primarily to the district court's discretion").

### 2. *Notice of Rule 50(b) Grounds*

The district court granted the Sheriff's Office's Rule 50(b) motion because evidence at trial showed that Ziccarelli "took FMLA leave after his phone call with Ms. Shinnawi." *JMOL Order*, 2024 WL 3740602, at *6. It found that this fact negated "any reasonable inference" of prejudice. *Id.* Even under an abuse of discretion standard, we conclude that the Sheriff's Office's Rule 50(a) motion did not provide Ziccarelli with notice of this ground for judgment as a matter of law.

Some background on Rule 50 clarifies why the Sheriff's Office's Rule 50(b) motion should have been denied here. Rule 50(a) motions must be made with specificity because "the purpose of the rule is to allow the responding party an opportunity to cure any defect in its case before it is submitted to the jury." *Laborers' Pension Fund v. A & C Environmental, Inc.*, 301 F.3d 768, 777 (7th Cir. 2002), citing Rule 50, Advisory Committee Notes, 1991 Amendment; see also *Urso v. United*

*States*, 72 F.3d 59, 61 (7th Cir. 1995) ("Rule 50 is designed to flush out reasons so that errors may be prevented without the need for appellate intervention."); *Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 826 F.2d 712, 716 (7th Cir. 1987) (collecting cases). In other words, we enforce the Rule 50 specificity requirement to prevent a litigant from waiting until the end of the trial to cry "gotcha!" *Sunny Handicraft (H.K.) Ltd. v. Envision This! LLC*, 66 F.4th 1094, 1098 (7th Cir. 2023). We try to apply Rule 50 with reference to this concern. Cf. *Laborers' Pension Fund*, 301 F.3d at 777 ("We have been insistent on strict compliance with the rule when the reason for the rule is served. We have not demonstrated that same insistence when the rationale of the rule is not well served by such an application."), citing *Szmaj v. American Telephone & Telegraph Co.*, 291 F.3d 955, 957–58 (7th Cir. 2002) (excusing failure to make Rule 50 argument at close of evidence in situation where evidentiary defect "rationale collapses").[1]

Because Rule 50(a)'s specificity requirement serves a notice function, the question is whether the non-moving party should have understood the grounds that were raised by the

---

[1] The parties dispute whether *Dupree v. Younger* governs the Rule 50 issue. 598 U.S. 729 (2023). *Dupree* is not instructive here because it addressed an entirely different issue: whether a post-trial Rule 50 motion is required to preserve a purely legal issue for appellate review when that issue was raised earlier in the case, such as in summary judgment practice. See *id.* at 734 (sufficiency-of-evidence challenges must be made after trial to preserve issue because pre-trial factual disputes become "ancient history" after trial, quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 824 (7th Cir. 2016)); *id.* at 735–36 (legal issues, which are not superseded by later developments in the litigation, do not need to be rehashed after trial to be preserved). *Dupree* did not address the relationship between pre- and post-trial Rule 50 motions.

Rule 50(a) motion. Such an assessment should encompass the broader trial context, including arguments made outside the four corners of a Rule 50(a) motion. The trial judge "has the feel of the case which no appellate printed transcript can impart." *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401 (2006), quoting *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 216 (1947). That case-based expertise may lead a district court to find that a Rule 50(a) motion adequately specified the "law and facts that entitle the movant to the judgment" even when the motion itself did not explicitly discuss every factual or legal detail.

We acknowledged that point in *Laborers' Pension Fund*, where we held that a Rule 50(a) motion properly preserved grounds for a Rule 50(b) motion when the supporting arguments had been made "over and over again" and the non-moving party "was made well aware of the grounds" for the Rule 50(a) motion by various pre-trial motions. 301 F.3d at 777. As a result, "the function of Rule 50 ha[d] been served and the issue preserved for appeal." *Id.*, quoting *Urso*, 72 F.3d at 61; see also *Parts & Electric Motors*, 826 F.2d at 716–17 (reviewing several trial filings to determine whether Rule 50(b) ground was preserved); *Moran v. Raymond Corp.*, 484 F.2d 1008, 1010 n.1 (7th Cir. 1973) (finding grounds preserved for appeal when prior argument made issue "abundantly clear").[2]

---

[2] *Laborers' Pension Fund* relied on an older version of Rule 50, which was amended in 2006 to permit renewal of any Rule 50(a) motion—deleting the requirement that the motion have been made at the close of all evidence. See *Production Specialties Group, Inc. v. Minsor Systems, Inc.*, 513 F.3d 695, 699 n.1 (7th Cir. 2008), quoting Rule 50, Advisory Committee Notes, 2006 Amendment. The amendment did not change Rule 50's

The district court concluded here that Ziccarelli knew of the "extra day" ground for the Sheriff's Office's Rule 50(a) motion because of discussion in a pretrial conference. *JMOL Order*, 2024 WL 3740602, at *5. For two reasons, we conclude that pretrial proceedings did not make this ground adequately clear. First, nothing in the pretrial transcripts or filings mentioned the specific fact upon which the district court granted judgment as a matter of law: that Ziccarelli took an extra day of FMLA leave on September 19. The district court seemed to recognize this, explaining that this evidence "emerged at trial." *Id.* at *6. If a significant piece of evidence does not "emerge" until trial, it will be difficult for a pre-trial conference to have notified the non-moving party of the significance of that evidence for Rule 50 purposes. This is especially true here. There was little testimony discussing Ziccarelli's one day of leave on September 19, and Ziccarelli contends correctly that the issue was not highlighted until closing arguments (and even then, it was discussed only briefly). Dkt. 865 at 314 (closing argument); *id.* at 256 (only testimony discussing extra day of leave, Ziccarelli stating: "Well, I still had FMLA, so I used a little bit before I got fired, or thought I'd get fired.").

The second problem is that the pretrial filings and transcripts focused on whether Ziccarelli could seek damages "snowballing" from his resignation, not whether Ziccarelli could show prejudice at all and therefore prove liability notwithstanding his having taken FMLA leave on September 19. This mismatch is important because of the notice concerns underlying Rule 50. A party may rely on specific facts or

---

specificity requirement and does not change *Laborers' Pension Fund*'s relevance here.

arguments not expressed in a Rule 50(a) motion only when the non-moving party is clearly on notice of a more general argument in the same genre. See, e.g., *Andy Mohr Truck Center*, 869 F.3d at 605 (affirming decision to consider Rule 50(b) motion when Rule 50(a) motion focused on lack of evidence to show unfair discrimination and Rule 50(b) motion attacked evidence as cherry-picked because "these all add up to the same thing"). That's not what we have here because the pre-trial arguments focused on the availability of a specific category of damages.

The district court concluded that pretrial discussion of resignation-related damages also put Ziccarelli on notice of a potential prejudice problem: "Prejudice means harm, and damages are the quantification of that harm." *JMOL Order*, 2024 WL 3740602, at *5. We agree that damages are generally a "quantification" of prejudice—and that damages and liability can be closely related in cases like this one where prejudice is an element of the plaintiff's case. But that does not solve the problem here because the pre-trial discussions (as relevant to this appeal) focused specifically on whether Ziccarelli could seek damages flowing from his resignation. That says nothing about whether he could seek other damages or show prejudice in other ways.

A recent FMLA decision helps clarify the point. In *Simon v. Cooperative Educational Service Agency #5*, the plaintiff alleged FMLA interference after the defendant, a school, failed to return her to an equivalent position following her FMLA leave. 46 F.4th 602, 604–05 (7th Cir. 2022). By trial, the plaintiff sought only injunctive and declaratory relief—specifically, "a declaration that [the school] had violated the FMLA when it failed to return Simon to an equivalent position following her

leave." *Id.* at 605. The district court granted declaratory relief and the school appealed, arguing that the FMLA did not support declaratory relief and the plaintiff had not suffered prejudice. We rejected both arguments. First, we explained that the FMLA authorizes "equitable relief," which includes declaratory judgments. *Id.* at 611; see also 29 U.S.C. § 2617(a)(2). Second, we explained that the plaintiff had proved prejudice by being forced to work "below her professional capacity" for a year even though she had not sought financial damages. *Id.* at 612. The fact that she had been placed in a less desirable position, alone, was "harm for which the FMLA provides a remedy." *Id. Simon* shows that the question of money damages—the issue discussed pre-trial in this case—is distinct from whether there has been an FMLA violation in the first place.

Both the district court and the defendants, in rejecting Ziccarelli's theory of damages, acknowledged that Ziccarelli might be able to show prejudice short of constructive discharge. In the first pre-trial conference, the court explained that Ziccarelli might be able to show a consequence from the interference "that didn't reach the point of constructive discharge." Dkt. 851 at 12. It noted that "a reasonable person might have given up the idea that I'm going to get any more FMLA leave and … maybe he would have structured his leave differently. Maybe he would have invoked sick pay or vacation pay or in some other way responded…." *Id.* at 14. This is true—Ziccarelli might have been able to make this showing—and it highlights the question Ziccarelli might have addressed through further testimony if the prejudice argument had been properly presented in a Rule 50(a) motion. Indeed, the Sheriff's Office explains that in the pretrial conference it argued Ziccarelli should not be able to seek "wages he would have

earned had he not retired"—not that he could not show prejudice at all. Before trial, the district court and defendants both seemed to believe that Ziccarelli could, for example, seek payment of his accrued sick leave even if he could not seek damages resulting from his resignation. See Dkt. 863 at 35–36 (saying *Ziccarelli I* implied that Ziccarelli could receive something "beyond recovery of accrued sick leave benefits"); see also Dkt. 851 at 37 (defense counsel saying that "the only damages that … Ziccarelli would be entitled to is the 176 hours of sick leave").

To be thorough, we also reviewed the motions in limine to see if any of them should have put Ziccarelli on notice that the district court might grant judgment as a matter of law based on Ziccarelli's additional day of leave when the Sheriff's Office made its content-free Rule 50(a) motion during trial. The Sheriff's Office's motion asked the court to exclude evidence on backpay, pension credit, and reinstatement, but acknowledged that those potential damages were separate from Ziccarelli's "remaining sick leave." Dkt. 840 at 3-4. It requested that, "other than his remaining sick leave that he could have used in conjunction with his remaining FMLA time and which he was not paid out for when he retired, this Court should preclude this damages testimony and asking for such an award because these damages are not permitted under the circumstances." *Id*. at 4 (footnote omitted). This motion confirms that the pretrial conversations were aimed at only post-resignation damages, not the consequences of Ziccarelli's one more day of FMLA leave.

The only potential indication that the district court's pretrial concern might go to liability is that the court invoked Rule 50. But that comment suggested the possibility of a "Rule

50 motion with respect to *damages*" if the court felt that "the *damage* award is unjustified." *JMOL Order*, 2024 WL 3740602, at *5 (emphases added). Even the district court's invocation of Rule 50 focused on a different issue than the one on which it ultimately granted judgment as a matter of law. And elsewhere in the same discussion, the court hinted that another possible procedural vehicle might be a motion for remittitur, further highlighting that the concern was not a substantive element of Ziccarelli's case: "whatever the procedural format … those are options available to the Court if I think that the factual record that is developed at trial simply does not support as a matter of law damages arising from Mr. Ziccarelli's choice to terminate his employment with the Sheriff's Office." Dkt. 863 at 39–40.

These pretrial discussions did not notify Ziccarelli of an argument that he might not be able to show prejudice because he took that one additional day of FMLA leave, which was the specific ground on which the district court granted judgment as a matter of law. That makes the judgment procedurally improper. See, e.g., *Production Specialties Group*, 513 F.3d at 699 (affirming denial of Rule 50(b) motion when argument was not made pre-verdict); *Wallace v. Flintco*, 143 F.3d 955, 963 (5th Cir. 1998) (finding non-compliance with Rule 50(a) when moving party did not "alert" non-moving party to grounds for sufficiency of evidence challenge and "allow" non-moving party the "opportunity to move to cure any such deficiency").

The Sheriff's Office makes three additional arguments on this procedural issue. First, it focuses on Ziccarelli's counsel's pretrial statement that "it was crazy for him to quit. … It was not objectively reasonable for him to quit based on what Ms. Shinnawi said." According to the Sheriff's Office, this

amounted to a binding admission that Ziccarelli could not show prejudice. We do not see it that way. The statement highlights the limited scope of damages available to Ziccarelli in this action, but it says nothing about whether he could show prejudice notwithstanding the one day of post-interference FMLA leave.

The Sheriff's Office next points out that it asked the district court how to properly preserve its Rule 50(a) motion and that the district court responded that the motion was "under advisement." The Sheriff's Office essentially argues that we should not penalize it for not pressing the contents of its argument on a district court that seemed at least reluctant to spend time listening to them and/or thought they were not needed.

We see the point, but on these facts, we disagree with the conclusion. There are plenty of circumstances in which lawyers must comply with procedural requirements to preserve arguments for later in the trial or appellate review, even when a district judge may express impatience or resistance to hearing the argument. See, e.g., *Levin v. Joseph E. Seagram & Sons*, 158 F.2d 55, 58 (7th Cir. 1946) (litigant must object to jury instructions; "before he can claim prejudice thereby he will have to do more than acquiesce in the court's response which he thinks unsatisfactory"); see also *Divane v. Krull Electric Co.*, 194 F.3d 845, 849 (7th Cir. 1999) ("While a party may believe it would be futile … and that the objection may irritate the court, it is still incumbent upon the party to make the objection in order to preserve the issue for appeal." (alterations omitted, quoting *Johnson v. Ashby*, 808 F.2d 676, 679 (8th Cir. 1987))); *Moran*, 484 F.2d at 1011 ("it is incumbent on counsel to make the record in the district court as to issues he wishes

to present on appeal"). Rule 50 presents one of those situations. The judge did not express any such impatience or reluctance here. But even if a district judge makes clear that she or he does not want to hear the grounds for a Rule 50(a) motion (which a judge should not do), counsel must still make those grounds clear, whether orally or in writing or both. See, e.g., *Passananti v. Cook County*, 689 F.3d 655, 660 (7th Cir. 2012) (oral motion accompanied by written document).

Finally, the Sheriff's Office offers its own procedural riposte. It argues that because Ziccarelli did not challenge the specificity of its Rule 50(a) motion when it was made, he has waived such a challenge now. We disagree. In *Wallace v. McGlothan*, the Sheriff's Office's primary authority for this argument, the non-moving party did not object to an argument raised for the first time in a Rule 50(b) motion and instead responded on the merits. 606 F.3d 410, 419 (7th Cir. 2010). We explained that, to preserve the procedural challenge for appeal, "the plaintiff must have objected when the defendant made his post-verdict motion." *Id. Wallace* does not stand for the premise that a non-moving party must object to an insufficiently specific *pre*-verdict motion, but that a litigant must object to an insufficiently specific *post*-verdict motion to preserve its procedural argument for appeal.

Here, Ziccarelli promptly and vigorously objected that the Sheriff's Office did not present any of its Rule 50(b) arguments in its pre-verdict motion. Ziccarelli made those procedural arguments both orally, after the Sheriff's Office orally renewed its pretrial motion, see Dkt. 865 at 335, and in writing. Dkt. 871. That puts this case outside the scope of *Wallace*.

Unlike in the cases cited by the Sheriff's Office, arguments on the specific relevance of Ziccarelli's one extra day of FMLA

leave were not "forcefully presented to the district court," so the function of Rule 50 was not served. See *Urso*, 72 F.3d at 61. Accordingly, we reverse the district court's entry of judgment as a matter of law without addressing the merits.

B. *New Trial*

The district court conditionally granted a new trial under Rule 59 in the alternative to its judgment as a matter of law ruling. Rule 50 and Rule 59 motions are subject to different standards, and a new trial may be proper even when a litigant fails to preserve adequately grounds for judgment as a matter of law. E.g., *Abellan v. Lavelo Property Mgmt., LLC*, 948 F.3d 820, 831 (7th Cir. 2020) ("Lavelo did not properly preserve these issues as grounds for judgment as a matter of law, but it did present them properly as grounds for a new trial."); see also *Mejia v. Cook County*, 650 F.3d 631, 634 (7th Cir. 2011) (explaining difference between Rule 50 and Rule 59 standards). A new trial presents an opportunity to remedy an evidentiary defect—which is denied when there is a "gotcha" Rule 50 motion. See *Morrison Knudsen Corp. v. Fireman's Fund Insurance Co.*, 175 F.3d 1221, 1260 (10th Cir. 1999) (collecting cases: "Courts of appeals have often ordered new trials rather than JMOL when a plaintiff could likely remedy its deficient evidence in a new trial.").[3]

---

[3] Ziccarelli asserts that the new trial motion was improper because the Sheriff's Office did not move for a new trial prior to the verdict. Rule 59(b) provides that a motion for a new trial must be filed "no later than 28 days after the entry of judgment." It has no other preservation or timeliness requirements relevant to this appeal, and unlike Rule 50, does not require a pre-verdict motion that must be renewed. See *Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209, 212–13 (7th Cir. 1995) (party does not need to move for a new trial before verdict). Ziccarelli cited *Jackson v. Esser*, 105 F.4th 948,

A district court's discretion in considering a motion for a new trial is "wide and our review deferential." *Mejia*, 650 F.3d at 634. The district court may assess the evidence presented and grant a new trial when it believes that the verdict went against the "manifest weight" of the evidence. *Id.* However, "a legal error can amount to an abuse of discretion." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 602 (7th Cir. 2019).

Here, the district court granted a new trial for the same substantive reason it granted judgment as a matter of law. It concluded that Ziccarelli had presented "insufficient evidence of prejudice." The court wrote that, notwithstanding

> the threats attributed to Ms. Shinnawi, Mr. Ziccarelli took FMLA leave after his phone call with Ms. Shinnawi, and he was not disciplined for taking that leave (or any prior leave). This fact negates any reasonable inference that Ms. Shinnawi's statements in her phone call with Mr. Ziccarelli caused him not to take FMLA leave.  Accordingly, the trial evidence is insufficient to support a jury finding of prejudice….

*JMOL Order*, 2024 WL 3740602, at *6 (footnote omitted).

We affirm the conditional grant of a new trial. The district court's new trial ruling was not an abuse of discretion for two reasons. First, the district court appears to have interpreted *Ziccarelli I* to foreclose a theory of relief based on constructive discharge. On this basis, it concluded that Ziccarelli could not claim prejudice resulting solely from his decision to retire.

---

965 (7th Cir. 2024), in support of this argument, but the plaintiff there never moved for either judgment as a matter of law or a new trial, making it quite different from this case.

The district court understood us correctly. See *Ziccarelli I*, 35 F.4th at 1090 ("[E]ven plaintiff's version of that conversation falls far short of evidence that could support a claim for constructive discharge.").

Second, the district court did not abuse its discretion by concluding that Ziccarelli had not presented evidence of prejudice aside from his resignation and the resulting harm. It properly pointed to the one post-conversation day of FMLA leave as evidence that Ziccarelli did not shy away from taking leave while he remained employed by the Sheriff's Office. And Ziccarelli's later resignation can be thought of as a non-interference-related event that precludes a claim of ongoing prejudice resulting from FMLA interference. See *Hickey v. Protective Life Corp.*, 988 F.3d 380, 389 (7th Cir. 2021) (affirming summary judgment when plaintiff suffered FMLA interference but was terminated for other reasons before he had "suffered any compensable damages under § 2617(a)(1)(A)(i)"); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 728–29 (7th Cir. 1998) (finding as a factual matter that plaintiff who was fired before she took requested FMLA leave could not demonstrate prejudice). *Hickey* and *Cianci* boiled down to proof problems: Hickey and Cianci could not show prejudice for purposes of their FMLA claims because they did not work at their jobs long enough to suffer prejudice. The same may well be true in this case.[4]

---

[4] The outcome would obviously be different if the termination was related to the FMLA interference. That is not true of Ziccarelli's resignation, see *Ziccarelli I*, 35 F.4th at 1091 (noting that a reasonable person in Ziccarelli's shoes would have "thought he had several options short of immediate retirement"), and apparently was not true of the firings in *Hickey*

We note that the district court has not addressed a theory of relief that it (and the parties) discussed in the pretrial conferences: whether Ziccarelli might obtain "accrued sick leave benefits." Indeed, the Sheriff's Office appeared to concede pre-trial that Ziccarelli could seek accrued sick leave benefits if he otherwise prevailed on the merits. See Dkt. 840 at 4. This theory presents some of the same problems addressed in *Hickey* and *Cianci*, which are related to the district court's finding that Ziccarelli has not presented evidence of prejudice. It is not clear to us how Ziccarelli can claim his unpaid sick time as a "direct result of the violation" if he is deemed to have resigned voluntarily, and we do not know whether he might have had a contractual entitlement to the sick leave. See 29 U.S.C. § 2617(a)(1)(A)(i)(II); *Simon*, 46 F.4th at 612 ("A plaintiff cannot collect damages for periods of time in which he otherwise could not have worked for the company."). But Ziccarelli's theory of how he might obtain accrued sick leave benefits can be explored on remand. Depending on how persuasive that theory is, and whether he can access damages in the new trial, the court might reconsider its new trial order in connection with the Sheriff's Office's motion for remittitur, which the court did not reach. *JMOL Order*, 2024 WL 3740602, at *3; see also *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) ("the district court has the discretionary authority to reconsider a new trial order.").[5]

---

or *Cianci* either. See *Simon*, 46 F.4th at 613 (noting lack of causation in *Hickey*).

[5] We also take no position on whether the FMLA allows an award of nominal damages, a question that has not been briefed for us and is not suitable for non-adversarial resolution. See also *Simon*, 46 F.4th at 611 n.3

*      *      *

Before we wrap up, a few housekeeping matters are in order. First, Ziccarelli contends that the law-of-the-case doctrine precludes consideration of the post-phone call day of FMLA leave. This is clearly wrong. As the district court explained, the timing issue was "not recognized" at summary judgment or in the last appeal, *JMOL Order*, 2024 WL 3740602, at *6, and we did not address it (regardless of whether Ziccarelli's timesheet was in the appellate record). See *Petaluma FX Partners, LLC v. Comm'r of IRS*, 792 F.3d 72, 79 (D.C. Cir. 2015) ("an issue 'assumed' by an appellate court in an initial appeal does not become the law of the case; rather, the 'law of the case doctrine does not apply where an issue was not raised before the prior panel and thus was not decided by it.'" (quoting *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001))). And despite our skepticism in *Ziccarelli I* about Ziccarelli's "efforts" to seek damages resulting from "snowballing consequences," we explained that "those issues need to be sorted out in the district court in the first instance." *Ziccarelli I*, 35 F.4th at 1090. We concluded that he *could* show interference, not that he *had* shown interference. The law-of-the-case doctrine, therefore, did not govern this issue on remand. See *Bradley v. Village of University Park*, 59 F.4th 887, 896 (7th Cir. 2023) (expressly or necessarily decided issues are governed by law-of-case doctrine). The district court carefully navigated the damages-related questions, adroitly resolving the parties' various motions in limine, and its resolution of those issues did not run afoul of *Ziccarelli I.*

---

(declining to address issue); *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 n.6 (7th Cir. 2008) (same).

We also decline to address the various damages-related motions that the district court did not resolve. These include the Sheriff's Office's motion for remittitur and Ziccarelli's motion for equitable relief. The district court did not address either motion because it granted judgment as a matter of law and a new trial in the alternative. Both motions remain open for the district court's consideration. See *David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003) ("We review a district court's remittitur under an abuse of discretion standard."); see generally *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 770 (1976) ("The fashioning of appropriate remedies invokes the sound equitable discretion of the district courts.").

Finally, we also decline to reassign the case under Circuit Rule 36, which allows us to remand to the same judge for a retrial. Judge Tharp has a thorough understanding of the record and of the various issues that make this case challenging. His knowledge and understanding will help guide the just resolution of this case.

The district court's grant of judgment as a matter of law is REVERSED. The district court's conditional grant of a new trial is AFFIRMED. The case is REMANDED to the district court for further proceedings consistent with this opinion.